292 So.2d 531 (1974)
STATE of Louisiana
v.
Tyrone ST. ROMAIN and Benny Gremillion.
No. 54435.
Supreme Court of Louisiana.
March 18, 1974.
William J. Guste, Jr., Atty. Gen., Mitchell B. Lansden, Sp. Counsel to Atty. Gen., Baton Rouge, Barbara Rutledge, Asst. Atty. Gen., Eddie Knoll, Dist. Atty., Jeannette Theriot Knoll, Asst. Dist. Atty., for plaintiff-relator.
John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Sp. Asst. Dist. Atty., amicus curiae for State of La.
Harold J. Brouillette, John Taylor Bennett, Marksville, Riddle & Bennett, for defendants-respondents.
John F. Rau, Jr., Harvey, Robert I. Broussard, Gretna, Samuel S. Dalton, New Orleans, amicus curiae for Criminal Bar Assoc. of Jefferson Parish.
CALOGERO, Justice.
On January 10, 1974 defendants, Tyrone St. Romain and Benny Gremillion, were *532 charged by Bill of Information in the Twelfth Judicial District Court with having violated La.R.S. 40:966, subd. A, distribution of marijuana, a controlled dangerous substance as defined in the Louisiana Uniform Controlled Dangerous Substance Law, R.S. 40:961 et seq. Trial was assigned for February 1, 1974.
On that date the District Court of its own volition refused to empanel a twelve man jury to try the case, holding that the offense of distribution of marijuana was a misdemeanor chargeable only under R.S. 40:971(A)(1). The State's argument that the offense was a felony chargeable under R.S. 40:966, subd. A(1) was rejected by the District Court because, in that Court's opinion, R.S. 40:966, subd. B(2), the penalty provision for violation of R.S. 40:966, subd. A(1) (distribution of marijuana) had been repealed by the adoption of Act 207 of 1973.
The State, preferring not to accept the trial court's ruling and proceed with the trial of the case as a misdemeanor under R.S. 40:971A(1), requested and was granted a Stay Order so that it could apply to this Court for supervisory writs. On February 15, 1971 this Court granted the State's application for writs of certiorari, prohibition, mandamus and for a Stay Order and ordered the matter set for argument on February 25, 1974, because of the importance of the issues involved and because of the advisability of a thorough, yet speedy resolution of the issue presented in this litigation, viz, whether 40:966, subd. B(2) the felony penalty for distribution of marijuana and other hallucinogens, has been removed from the law by virtue of the passage of Act 207 of 1973.
During the pendency of this case, motions of the Jefferson Parish Criminal Bar Association and the Attorney General of the State of Louisiana to be allowed to file amici curiae briefs, in support, respectively, of the positions of defendant and of the District Attorney for the Parish of Avoyelles, were granted.[1]
The Louisiana Legislature, recognizing the dangers the drug problem presents to the health and safety of the people of the State of Louisiana, by Act 634 of 1972 adopted the Uniform Controlled Dangerous Substances Law to comprise Part X of Chapter 4 of Title 40 of the Revised Statutes of 1950, now R.S. 40:961 et seq. Section 961 defines the terms used in the law. Section 962 states that the substances listed in section 964 are controlled, and gives the State Board of Health the authority to add a substance to those to be controlled depending on its potential for abuse. Section 963 states that there are five schedules of controlled substances, to be known as Schedules I, II, III, IV and V, and gives the standards by which the State Board of Health will add a new substance to one or the other of such schedules. Section 964 lists the controlled substances and classifies each under one of the five schedules.
Sections 966 through and including 970 describe the prohibited acts with respect to the substances in each schedule, respectively, and provide penalties for each prohibited act. These sections make it unlawful for any person knowingly or intentionally
To produce, manufacture, distribute or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance classified in the respective schedules;
or
To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in the respective schedules;
or
To knowingly (as relates to the substances in Schedules IV and V the enrolled bill says "unknowingly") or intentionally possess a controlled dangerous *533 substance classified in the respective schedules unless such substance was obtained directly or pursuant to a valid prescription.
Subsection B of each section provides the penalty for the proscribed acts listed in the two paragraphs of each subsection A (for brevity, distribution of a controlled dangerous substance and distribution of a counterfeit controlled dangerous substance). Subsection C of each section makes unlawful, and provides the penalty for, possession of the substance(s) classified in the respective schedules. (Possession of marijuana is given treatment separate from the other sixteen non-narcotic Schedule I substances and appears at R.S. 40:966, subd. D.)
In 1973, the Legislature enacted Act 207 amending and reenacting (in 12 sections) various provisions of Part X of Chapter 4 of Title 40. By its title and sub-title it purports to amend and reenact among other sections Subsection B (and C) of Section 966.
As initially enacted by the Legislature, the distribution of marijuana and the other sixteen non-narcotic Schedule I substances (these were all classified as hallucinogens under Schedule I C) was prohibited by Subsection A of Section 966 and the penalty was provided by Subsection B(2) of Section 966 (the pertinent penalty here is not more than 10 years at hard labor and a fine of not more than $15,000.00).
The 1973 amending statute, at Section 3, provides as follows:
Section 3. Subsection B and C of Section 966 of Title 40 of the Louisiana Revised Statutes are amended and reenacted to read as follows:
§ 966. Prohibited actsSchedule I; penalties
* * * * * *
B. Penalties for violation of Subsection A. Any person who violates Subsection A with respect to:
(1) A substance classified in Schedule I which is a narcotic drug (all substances in Schedule I preceded by an asterisk "*"), upon conviction shall be sentenced to life imprisonment at hard labor and, in addition, may be required to pay a fine of not more than Fifteen Thousand Dollars.
* * * * * *
C. Possession. It is unlawful for any person knowingly or intentionally to possess a controlled dangerous substance classified in Schedule I unless such substance was obtained directly, or pursuant to a valid prescription or order from a practitioner or as provided in R.S. 40:978, while acting in the course of his professional practice, or except as otherwise authorized by this part. Any person who violates this subsection with respect to:
(1) A substance classified in Schedule I which is a narcotic drug (all substances in Schedule I preceded by an asterisk "*"), shall be imprisoned at hard labor for not less than four years nor more than ten years without benefit of probation or suspension of sentence and may, in addition, be required to pay a fine of not more than Five Thousand Dollars.
(2) Any other controlled dangerous substance classified in Schedule I, shall be imprisoned at hard labor for not more than ten years, and may in addition, be required to pay a fine of not more than Five Thousand Dollars.
* * * * * *
Section 4 . . .
The enrolled bill contained the three (3) asterisks between Subsection B(1) and Subsection C (See above). This is the original bill approved by both houses of the Legislature and signed by the Governor. The Secretary of State published the act without the three asterisks between Subsection B(1) and Subsection C. This is the version of the bill which was published in the Official State Journal (The *534 State-Times of Baton Rouge) and in the bound volume of the acts of 1973.
The trial judge, apparently reading from a version of the act which omitted the three asterisks between 966B(1) and 966C, concluded that R.S. 40:966B(2) had been repealed because left out of the reenactment. He ruled that distribution of marijuana was only punishable as a misdemeanor under R.S. 40:971, subd. A(1), a statute which the Attorney General notes in brief is only "possibly" available for use in the prosecution of these defendants.
The only question presented this Court is whether the trial judge was correct in holding R.S. 40:966, subd. B(2) deleted, or repealed from the law. Two inquiries are in order. The first is which, precisely, is Act 207 of 1973, the enrolled bill with is three (3) asterisks between B(1) and C or the promulgated bill without the pertinent asterisks. The second inquiry is, does the act inadvertently or otherwise effect the repeal of Section 966B(2).
Our research has revealed that the question as to which should prevail in the event of conflict between a bill as enrolled and as promulgated has not heretofore been answered by this Court. We conclude that the only logical and rational answer is that the enrolled bill or the bill as passed by both houses of the Legislature and signed into law by the Governor is the version which prevails. This we feel is supported by a proper construction of Article 3 Section 27 of the Constitution of 1921[2] and it is supported by other jurisprudence in this country. See Carlton v. Grimes, 237 Iowa 912, 23 N.W.2d 883 (1946) and authorities cited at Crawford, Statutory Construction § 45, n. 135 (1940).
Having concluded that the actual Act 207 of 1973 is the enrolled version containing the three asterisks between B(1) and C, we next consider the effect of the pertinent section (3) of that act. The title to Act 207 and the subtitle at section 3 both purport to amend and reenact subsections B and C of section 966. However, the body of the act in fact amends and reenacts (as to B) only subsection B(1). The act places the three asterisks after the amended and reenacted B(1) and before the amended and reenacted C, those asterisks indicating "a subsection not being amended or reenacted."[3]
The inclusion of the arabic numeral one (1) preceding the only reenacted paragraph of B lends further support to the fact that B(2) was left unaffected in the law, for were B(2) to have been repealed, there would have been no reason to designate the sole remaining paragraph of B as (1).
Thus it is apparent that the body of the act does not amend and/or reenact B(2), notwithstanding the title and subtitle claim that B (inferentially all of B including B(2)) is to be amended and reenacted.
It becomes necessary for us to resolve this ambiguity between the title and subtitle of the amending act on the one hand, and the body of the act at the pertinent section on the other. We believe that the only reasonable construction and the one which comports with the readily apparent intention of the Legislature[4] is to *535 resolve the conflict, or ambiguity, by giving effect to the body rather than to title and subtitle of the amending statute. Holding that the effect of the statute is narrower than the promise of its title (i. e., that only B(1) is in fact amended while the title says that all of B is to be amended) does not run afoul of Article III, section 16 of the Louisiana Constitution of 1921 and its proscription that every statute enacted by the Legislature shall embrace only one object and shall have a title indicative of its object. As we stated in State v. Hertzog, 243 La. 647, 146 So.2d 149 (1962) that Constitutional prohibition applies only to the situation where the body of a statute is broader than its title and not to the situation where the title exceeds the body of the Act.
Because we find that Act 207 of 1973 does not amend or reenact Subsection B(2), section 966 of Title 40, the cases cited by defendants[5] for the proposition that omission of part of a statute in its amendment and reenactment effects the repeal of the omitted language are inapposite. The case at hand is clearly distinguishable for in each of the cited cases the title and subtitle promised, or asserted, amendment and reenactment of the given statute, and the body thereof, without equivocation, ambiguity or hint of retention, fully substituted a reenacted statute for its predecessor. Language of the former statute omitted in the reenacted statute in those cases was properly construed to have been deleted (or repealed) from the law.
Our construction of the body of section 3 of the act and the import of the three asterisks between B(1) and C (as indicating that B(2) is not amended and reenacted) is supported by the identical employment of the three asterisks at another place in Act 207 of 1973, namely, at section 2. That section reads:
Section 2. Schedule II of Section 964 of Title 40 of the Louisiana Revised Statutes is amended and reenacted to read as follows:
§ 964. Composition of schedules
Schedules I, II, II, IV and V shall, unless and until added to pursuant to R.S. 40:962, consist of the following drugs or other substances, by whatever official name, common or usual name, chemical name, or brand name designated:
* * * * * *
SCHEDULE II
* * * * * *
E. Methaqualone
* * * * * *
The first set of asterisks above allude to Schedule I which is, as per the title, not affected by the amending statute, just as the last set of asterisks allude to Schedules III, IV and V which are also, as per the title, unaffected by the statute. The middle set of asterisks, however, allude to Subsections A through D purportedly amended and reenacted, by the subtitle, which are quite obviously not repealed or omitted from the law even though the subtitle says that Schedule II (inferentially all of Schedule II) is amended and reenacted, for the designation "E" makes sense only if A through D are retained, just as the designation "(1)" at 40:966B(1) makes *536 sense only if a successor paragraph, "(2)", is retained in the law.
We therefore conclude that the Act 207 of 1973 did not amend and reenact paragraph (2), subsection B of Section 966, Title 40, but rather left it unaffected in the Uniform Controlled Dangerous Substances Law, just as it did many other provisions of that law. R.S. 40:966, subd. B(2) was not repealed or deleted from the law intentionally or otherwise.
Since we hold that R.S. 40:966, subd. B(2) remains a valid and effective provision of the law, the trial judge, whose capable effort in trying to solve a difficult and extremely complex problem caused by imprecision in the drafting of this statute, in our view, should not have refused to empanel a twelve man jury for trial of the offense of distribution of marijuana, a felony in violation of R.S. 40:966, subd. A punishable under the provisions of R.S. 40:966, subd. B(2).
Judgment reversed and remanded for proceedings not inconsistent with the views expressed above.
Reversed and remanded.
BARHAM, J., concurs in the decree.
NOTES
[1] Filing of an amicus curiae brief by the District Attorney of Jefferson Parish on behalf of the State of Louisiana has also been permitted.
[2] Art. 3 Sec. 27 provides that enacted laws shall go into effect at noon on the twentieth day after the Legislature has adjourned and that all Acts shall be published without delay after passage. The practical effect of this provision is that the laws are in effect prior to publication. The version that may then be said to be in effect is the enrolled bill.
[3] See April 15, 1972 Legislative Bureau "Style Form for the Louisiana Legislature" printed by permission of the President of the Senate, Lt. Gov. C. C. (Taddy) Aycock and the Speaker of the House, Rep. John S. Garrett, and with the approval of the Lt. Gov.-elect, James E. Fitzmorris, Jr., and Attorney Gen.-elect William J. Guste, Jr., where at page one there appears the following explanation:

"Asterisks when used, are used only to denote those parts of the section or subsection not being amended or reenacted."
[4] It should be noted that the Legislature left unchanged the penalty provision under R.S. 40:981, subd. C for distribution of any other controlled dangerous substance listed in Schedules I, II, III, IV or V other than Schedule I or II narcotic drugs by a person who is at least eighteen to a person under eighteen who is at least three years his junior. The penalty for any such distribution is up to twice that authorized by R.S. 40:966 R.S. 40:970. The Legislature in Act 207 of 1973 amended subsection A of section 981 but did not effect any change in subsection C. To hold that R.S. 40:966B(2) is no longer law would mean that there is no penalty for distributing Schedule I non-narcotic drugs to minors (under R.S. 40:981, subd. C). Had the Legislature intended to repeal R.S. 40:966, subd. B(2) some change would more than likely have been made to protect minors from Schedule I non-narcotic drugs.

An examination of R.S. 40:981, subd. C in conjunction with the three asterisks and the arabic 1 makes clear beyond any doubt that the Legislature intended no repeal of R.S. 40:966, subd. B(2).
[5] State ex rel Brittain v. Hayes, 143 La. 39, 78 So. 143 (1918); De Drueys v. Burns, 144 La. 707, 81 So. 259 (1919); State v. Allison, 146 La. 495, 83 So. 778 (1920); Kirby v. Crystal Oil Refining Corp., 11 La.App. 562, 123 So. 432 (1929) and Bass v. Weber-King Mfg. Co., 11 La.App. 117, 119 So. 774 (1st Cir. 1929).