895 P.2d 282

**Craig D. TANNER, Claimant–Appellant,**

v.

**BOSQUE HONEY FARM, INC., Respondent–Appellee.**

**No. 15821.**

Court of Appeals of New Mexico.

April 25, 1995.

Steven J. Clark, Peralta, for claimant-appellant.

Gerald A. Hanrahan, Albuquerque, for respondent-appellee.

### *OPINION*

PICKARD, Judge.

■ Worker appeals from an order dismissing with prejudice his complaint for workers' compensation. The sole issue on appeal is whether Worker was a "farm laborer" for purposes of the Workers' Compensation Act. *See* NMSA 1978, § 52–1–6(A) (Repl.Pamp.1991) (effective January 1, 1992). We hold that the workers' compensation judge did not err in finding that Worker was a farm laborer and dismissing Worker's complaint. Accordingly, we affirm.

Many of the judge's findings are not challenged on appeal. Therefore, they are deemed true for purposes of our analysis. *See* SCRA 1986, 12–213(A)(3) (Cum.Supp. 1994); *see also Sanchez v. Memorial Gen. Hosp.*, 110 N.M. 683, 689, 798 P.2d 1069, 1075 (Ct.App.), *cert. denied*, 110 N.M. 653, 798 P.2d 1039 (1990). The findings not challenged are the following:

1. Bosque Honey Farm, Inc. ("Employer"), is engaged in the business of beekeeping and maintains a honey farm in Bosque Farm, New Mexico.

2. Beekeeping is regulated by the New Mexico Department of Agriculture. . . .

3. Employer's beekeeping operation is regulated by the New Mexico Department of Agriculture.

4. Beekeeping is an important agricultural pursuit that produces a raw agricultural product, honey.

5. Beekeeping provides pollination services essential for numerous seed, fruit and nut crops.

6. Employer's farm is located on property zoned for agricultural use.

7. The crop of honey is harvested upon Employer's farm, following completion of an extraction process.

8. A "super" is a wooden box that is removable from the bee hive. The super contains frames of honey combs. The bees produce and store honey in numerous cells on the frames. Once filled with honey, the bees typically seal the cells with bees wax.

9. Extraction of honey from the frames is necessary to harvest honey: The harvest of honey requires:
   1. The bees wax layer is cut to uncap the cells;
   2. The frames are spun in a centrifuge to allow the honey to be thrown out of the cells;
   3. The honey is drained into a sump and pumped into storage tanks; and
   4. The honey is drained into barrels for storage or sale.

10. Honey is not harvested until it has been extracted from the frames and collected in barrels or other containers and is ready for sale.

11. At all times during his employment with Employer, Craig Tanner ("Worker") worked as a beekeeper's assistant.

12. Worker's primary job responsibility was to assist with the extraction of honey from the frames. Worker's job normally involved uncapping the frames, the first part of the extraction process.

13. When Worker's job was complete, honey still remained in the cells of the frames and had yet to be harvested.

14. The general nature of Worker's employment was to assist in the harvesting of honey.

15. Worker's secondary job responsibilities included maintaining the bee hives, the honey farm and farm equipment.

16. Worker's secondary job responsibilities are essential functions related to the harvesting of honey.

Instead of attacking any of the above findings, Worker makes a general contention that because he did not participate in the cultivation or production of honey in the field, he should not be called a farm worker. We will treat this contention as a challenge to the judge's last finding, that "Worker was employed by Employer as a farm laborer."

The Act provides that "[t]he provisions of [the Act] shall not apply to employers of private domestic servants and farm and ranch laborers." Section 52–1–6(A). Worker contends that the judge erred in finding that he was a farm laborer for purposes of the Act.

While no New Mexico case is directly on point, two cases are factually similar to the instant one and are instructive on the issue presented in this case. In the first, *Holguin v. Billy the Kid Produce, Inc.*, 110 N.M. 287, 795 P.2d 92 (Ct.App.1990), the worker sorted the employer's onions in an onion shed, placing them into sacks. The shed was located on property that was owned by the employer, but was zoned as commercial property and was not crop-producing land. *Id.* at 288, 795 P.2d at 93. The *Holguin* court held that the worker was not a farm laborer because "[the] worker's primary responsibilities were not

performed on land where crops were grown, nor were his duties an essential part of the ... cultivation process such as irrigation or fertilization." *Id.* at 289, 795 P.2d at 94. Significant in *Holguin* is the fact that the court rejected an expansive definition of "farm laborer," one that would have included within its purview "'all things incident to farming in the widest sense of that term.'" *Id.* (quoting *Anaya v. Industrial Comm'n,* 512 P.2d 625, 626 (Colo.1973).

The *Holguin* court relied primarily upon the precedent established in *Cueto v. Stahmann Farms, Inc.,* 94 N.M. 223, 608 P.2d 535 (Ct.App.1980). In *Cueto,* the worker's primary duty was to maintain a compost heap which was used to fertilize his employer's pecan trees located on the farming premises of the employer. *Id.* at 224, 608 P.2d at 536. The *Cueto* court held that the worker was a farm laborer because "[t]he undisputed evidence in the record indicates that [worker]'s primary responsibility was to manufacture fertilizer for farming operations. This was done on the farming premises of [employer], and was an essential part of the cultivation of the pecans; it is farm labor under the exclusion." *Id.*

As the *Holguin* court observed, "[w]hat is a 'farm laborer' within the meaning of the Act is a question of law. Whether a worker fits the definition is ordinarily a question of fact. If, however, the facts are undisputed, then the question becomes one purely of law." *Holguin,* 110 N.M. at 288, 795 P.2d at 93. In this case, the facts as set out above are undisputed. Therefore, the question that we must answer is whether Worker was a farm laborer under the undisputed facts as presented in this case. *Id.*

In contrast to *Holguin,* Worker was not merely sorting an agricultural product that was already harvested. Instead, he was participating in the harvesting itself on land on which some bees were kept for purposes of producing honey. Neither *Holguin* nor *Cueto* addressed the question of whether harvesting was an essential part of cultivating crops.

Although *Holguin* relied upon the fact that the worker was not involved with the cultivation of crops, *id.* at 290, 795 P.2d at 95, we do not think that the narrow definition of the farm labor exception endorsed by the *Holguin* court excludes persons involved in harvesting. Indeed, cases from other jurisdictions, some cited by Worker, that discuss a farm labor exception to their workers' compensation schemes, refer to the word "harvesting" as being included in the term "farm labor." *See, e.g., Hefley v. Morales,* 595 P.2d 233, 235 (Colo.1979) (en banc); *Hinson v. Creech,* 286 N.C. 156, 209 S.E.2d 471, 473 (1974); *United States Fire Ins. Co. v. Alvarez,* 657 S.W.2d 463, 467–68 (Tex.Ct.App. 1983).

■ Other cases, while not rejecting the concept that harvesting is included in the term "farm labor," focus on whether the product being handled by the worker has left the stage of agricultural production and entered the stage of "industrial processing." *See, e.g., Dobbins v. S.A.F. Farms, Inc.,* 137 So.2d 838, 839–41 (Fla.Dist.Ct.App.1962); *Robichaux v. Realty Operators, Inc.,* 195 La. 70, 196 So. 23, 26 (1940); *Cowiche Growers, Inc. v. Bates,* 10 Wash.2d 585, 117 P.2d 624, 631–32 (1941). The focus on the distinction between farm labor and industrial processing is consistent with Professor Larson's discussion of the proper definition of farm labor:

The exemption of farm labor is construed according to the character of the work regularly performed by the employee, not according to the nature of the employer's business. But if a process performed on the farm is merely the first stage in the processing of a commodity by an industrial employer, such as a cannery or sugar refinery, the work may be held nonagricultural.

1C Arthur Larson, *The Law of Workmen's Compensation* § 53.00 at 9–209 (1993). Thus, we follow these authorities and hold that harvesting is farm labor while processing is not.

■ Professor Larson also points out that activities incidental to farming, such as sorting potatoes, may be within the exemption. *Id.* § 53.33 at 9–225 to 9–226. However, we have expressly rejected Professor Larson's latter proposition insofar as it relates to activities incidental to farming that are con-

ducted in a packing-house operation. *Hol-guin,* 110 N.M. at 290, 795 P.2d at 95. That is not to say that a worker is not a farm laborer simply because the worker's primary job responsibilities are conducted in a structure in which packing is also performed. We stressed in *Holguin* that whether a worker is a farm laborer is a determination to be made by reference to the "general character of the worker's work, rather than his activity on any particular day." *Id.* at 289, 795 P.2d at 94. We again point out that the dispositive factor in determining whether the worker is a farm laborer is the general character of the worker's work, and while the location on which a worker performs his work is a factor to be considered, *id.,* it is not dispositive.

In the instant case, Employer does not argue, and the evidence at trial did not show, that Worker's primary job responsibilities were incidental to honey farming. Rather, Employer argues that they were an integral part of such farming. Neither of the parties directed us to any authority that would provide any guidance delineating what "harvesting" is as a matter of law or at what point harvesting ends and processing begins. Nor were we able to find any such authority through our independent research. However, we need not answer that question in this case, as Worker testified at trial that the honey produced by Employer could not be extracted until Worker's primary job responsibility was completed. Moreover, Employer introduced at trial the deposition testimony of an expert witness, Dr. Gordon Waller. That uncontradicted testimony established that honey was not harvested until it was extracted. Just as an apple is not harvested until it is severed from the tree, the honey in this case was not harvested until it was severed from the frame. While there may be cases in which the evidence is conflicting on the question of whether a worker's primary job responsibilities are part of harvesting or processing, that scenario is not presented in this case. *See Holguin,* 110 N.M. at 290, 795 P.2d at 95.

In this case, the judge's conclusion that Worker was a farm laborer was based on the undisputed testimony that Worker's primary job responsibility was part of the harvesting process. Worker did not provide any evidence that would have pointed the judge to a contrary conclusion. Therefore, we find no error in the judge's determination that Worker was a farm laborer for purposes of the Act. *See Cueto,* 94 N.M. at 224, 608 P.2d at 536 (when undisputed evidence indicates that worker involved in farm labor, worker has no cause of action for workers' compensation).

█ We have also reviewed Employer's motion to dismiss Worker's appeal. Employer is correct in asserting that, under our rules of appellate procedure, Worker should have referred us to portions of Dr. Waller's deposition testimony. *See* SCRA 1986, 12–208(B)(3) (Repl.1992) and SCRA 1986, 12–213(A)(2) (Cum.Supp.1994) (docketing statement and briefs shall contain summary of all facts relevant to the issues presented for review). We did find the portion of Dr. Waller's deposition testimony that indicated that Worker was involved in harvesting to be essential to our disposition on appeal. However, Worker's brief in chief is directed at the *Holguin* court's holding that farm labor does not include every activity incidental to farming. As noted above, neither *Holguin, Cueto,* nor any of the out-of-state cases cited in this opinion directly addressed the issue of whether farm labor includes harvesting. In light of our reliance on this previously unconsidered distinction, Worker's failure to refer to that portion of Dr. Waller's deposition testimony that classified extraction of honey as harvesting is understandable. Employer's motion to dismiss Worker's appeal is denied.

The order dismissing with prejudice Worker's complaint for compensation is affirmed.

**IT IS SO ORDERED.**

ALARID and BOSSON, JJ., concur.